RONALD KEMPER, Plaintiff-Appellee, v. ROBIN KEMPER, et al., as Co-Executors of the Estate of Paul Kemper, Deceased, et al., Defendants (Lucille Kemper, Defendant-Appellant).

Fourth District No. 4—88—0463

Opinion filed January 9, 1989.

Kennith W. Blan, Jr., of Danville, for appellant.

Everett L. Laury, of Hutton, Laury, Hesser & Lietz, of Danville, for appellee.

JUSTICE GREEN delivered the opinion of the court:

The case concerns an interest, to the extent of slightly in excess of $119,914.78, in a certificate of deposit issued by defendant State Bank of Oakwood (Bank) and standing in the name of defendant Lucille Kemper (Lucille). On June 25, 1987, plaintiff Ronald Kemper (Ronald), stepson of Lucille, filed suit in the circuit court of Vermilion County seeking a declaration that he was entitled to ownership of the above-described interest as the sole beneficiary of a remainder interest in a trust created under the will of his deceased mother, Frances M. Kemper (Frances). In addition to Lucille and the Bank, Lucille and Robin Kemper (Robin), plaintiff's wife, as executors of the estate of Paul Kemper (Paul), plaintiff's deceased father and Lucille's deceased husband, were joined as defendants. After a bench trial, the court entered a judgment on June 24, 1988, granting plaintiff the relief he requested. Lucille appeals in her individual capacity. We affirm.

This suit arises from the following unusual, undisputed set of facts. Frances died testate on May 29, 1980. In her will, she bequeathed her personal effects to her husband, Paul. She then set up a trust for the residue of her estate, naming her husband and another as trustees. (The second trustee predeceased Frances.) The trust provisions directed the trustees to pay the income of the trust to Paul during his life and, upon his death, to Frances' children, Ronald and Mike. Mike died without leaving any issue, and Ronald is admittedly entitled to any residue of the trust.

Frances' will was admitted to probate in the circuit court of Vermilion County on June 12, 1980, and Paul was appointed as executor of her estate. The petition for probate of her will listed Paul both in his individual capacity and as trustee. The bulk of Frances' estate consisted of a certificate of deposit in the amount of $102,757.09, and the parties in the instant case have stipulated that amount constituted Frances' residuary estate. That sum of money together with earnings thereon, as traced to the certificate of deposit issued by the Bank, is the subject matter of this case.

The dispute arises because Paul, in his final report and account as

executor, listed the certificate of deposit in the sum of $102,757.09 as an asset of the estate which was distributed to "Paul Kemper" without any designation that he received it in his capacity as trustee. Proper notice of the hearing on that account and report was given to plaintiff, who was then under no disability, and he made no objection to the report. The court approved the account and report and discharged Paul as executor by order of August 3, 1981. The parties agree Paul used the proceeds from the $102,757.09 certificate of deposit to obtain the certificate of deposit issued by the Bank and that Paul subsequently placed that certificate in the name of himself and his second wife, Lucille, as joint tenants.

Paul died testate on October 13, 1984, and his will was admitted to probate in the circuit court of Vermilion County on October 25, 1984, with Lucille and Robin named as his executors. The Bank certificate of deposit was listed in the inventory in Paul's estate, but the parties do not dispute that any interest in that certificate which belonged to Paul passed to Lucille as a matter of law.

The dispute between the parties centers upon the effect of the judgment of the court in Frances' estate approving the account and report which indicated the certificate of deposit, then an asset of that estate, had been distributed to "Paul Kemper." Lucille maintains the judgment approving the report made a binding determination between Paul, in his individual capacity, and plaintiff that Paul was entitled to the proceeds from the certificate of deposit. Lucille asserts plaintiff's instant suit is an impermissible collateral attack on the judgment of August 3, 1981, which approved that report. Plaintiff contends he is not attacking the judgment but seeking to impose a constructive trust upon the certificate of deposit after Paul had received it.

 █ The order approving Paul's final account and report in Frances' estate was clearly a final order as to the whole proceeding. We are aware of the general legal principles in regard to the ability of a party properly before a court to subsequently attack such an order other than by direct appeal. At all times present, section 24—2 of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 24—2) has stated that a final account and report after approval "in the absence of fraud, accident or mistake" is "binding upon all persons to whom [proper] notice was given."

Lucille calls our attention to *Mosier v. Osborn* (1918), 284 Ill. 141, 119 N.E. 924. There, the court upheld the right of one purporting to be an heir of a decedent to bring suit claiming an interest in certain real estate as an heir of the decedent even though a decree of heirship excluding that person as an heir had been entered in the probate

proceedings concerning the decedent's estate, and that order had been finalized by an order approving the executor's final account and report. The supreme court held that, as the plaintiff had only been served constructively in the probate proceedings, those proceedings were only *in rem* proceedings as to the decedent's personal estate as far as the plaintiff was concerned and not binding as to plaintiff in regard to the real estate of the decedent. Lucille contends the language describing the probate proceedings as *in rem* indicates the ruling on the final account and report determines the right to personal property of the estate.

We do not dispute the fact that a ruling in regard to the final report ordinarily determines the rights of those claiming interest in the personalty who are properly notified of the report. However, as pointed out by plaintiff, a special factor exists in this case. The situation here is very similar to that in the case of *In re Estate of Winston* (1981), 99 Ill. App. 3d 278, 425 N.E.2d 973. There, as here, a spouse served as personal representative (administrator with the will annexed) of a decedent's estate, and the will named her as trustee of a trust, under which the spouse was a life beneficiary with remainder in the couple's sons. The final report of the spouse as administrator with the will annexed showed she had distributed the assets of the estate which were to go into the trust to herself. Evidence showed she treated the property as her own. In a subsequent suit by one of the sons against the estate of the spouse, the Appellate Court for the First District held that approval by the court administering the estate of the original decedent after proper notice did not prevent the son from seeking to impose a constructive trust upon property which the spouse-administrator had distributed to herself.

The situation in *Winston* differed in two ways from that here. In regard to the distribution of one asset to the spouse, the administrator's final report stated it had distributed to her " 'as per will.' " (*Winston*, 99 Ill. App. 3d at 286, 425 N.E.2d at 980.) No such additional designation was made here. Also, the trust referred to in the will in *Winston* was one which was in existence at the time of the decedent's death, and the spouse was one of the trustees. Here, the trust for which the spouse was named as trustee was created by the will, and the spouse apparently never recognized the existence of the trust or indicated he was serving as a trustee.

The *Winston* court concluded the final report in the decedent's estate did not determine the capacity in which the spouse received the assets and, thus, the suit by the son was not a collateral attack upon the order approving the report. Notably, this ruling applied not only

as to the assets shown as distributed " 'as per will,' " but also as to those not so designated. The *Winston* court also held the approval of the final report did not bar the son from contesting the actions of his mother in not including certain assets as part of the decedent's estate. The court explained that the circuit court's approval of the spouse's conduct as executor did not absolve her from violation of her fiduciary duty as trustee in seeing that she obtained the assets for the trust to which it was entitled.

A strong argument can be made that here, as in *Winston*, the approval of the final report in the probate proceedings did not determine the capacity in which the assets, which should have been in the trust, were received by the spouse. However, we deem the *Winston* court's analysis in regard to the trustee's responsibility for failing to obtain assets to which the trust was entitled to be even more significant. The instant suit did not charge Paul in his capacity as executor but in his capacity as trustee. Although Paul had never formally accepted the trustee's position, he clearly knew of it and took no action to disaffirm it. He had a fiduciary duty to plaintiff which arose upon his acceptance of the property which belonged to the trust. Upon that acceptance, a trust was constructively imposed upon the property. The approval of Paul's final report as executor did not relieve Paul of that fiduciary duty.

The circuit court properly ruled that the instant proceeding was not a collateral attack upon the August 3, 1987, approval of the final report and account in Frances' estate and properly ruled in favor of plaintiff. We affirm.

Affirmed.

McCULLOUGH, P.J., and KNECHT, J., concur.